## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**ANDREA FLEITAS,**

      **Plaintiff,**

                                           **Case No.: 6:18-cv-1854-Orl-28KRS**

**vs.**

**CLAYTON & MCCULLOH, P.A., et. al.,**

      **Defendants.**               /

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT, CLAYTON & MCCULLOH, P.A.'S, MOTION TO DISMISS SECOND AMENDED COMPLAINT AND SUPPORTING MEMORANDUM OF LAW [DE #45]

### INTRODUCTION

Under 15 U.S.C. §1692 (the "FDCPA"), the Andrea Fleitas ("Plaintiff") filed its Second Amended Complaint and Demand for Jury Trial [DE #44] ("Complaint"), alleging in the relevant portions that Clayton & McCulloh, P.A., ("Defendant") violated the FDCPA. In Count I, Plaintiff alleges that Defendant violated 15 U.S.C. §1692(e)(2)(B) by misrepresenting compensation that Defendant could lawfully receive in collecting the debt. Specifically, Plaintiff alleges that Defendant misrepresented to Plaintiff, in a letter sent by Defendant on July 9, 2018, (the "Letter"), that Defendant was entitled to collect charges because some of the charges sought were unauthorized by the Second Restated Declaration of Restrictions and Protective Covenants for Summit Greens Residents' Association, Inc., ("Governing Documents"), and that Defendant misrepresented to Plaintiff in the Letter that Defendant was entitled to compensation for services because some of those services had not been provided. [DE #44 ¶24 - ¶27].

In Count II, Plaintiff alleges that Defendant violated 15 U.S.C. §1692(e)(2)(A) by misrepresenting the total debt owed by Plaintiff in the Letter. Specifically, Plaintiff alleges that Defendant misrepresented to Plaintiff in the Letter that Defendant was entitled to collect $3209.06 because some of the charges that substantiate the $3,209.06 were unauthorized by the Second Restated Declaration of Restrictions and Protective Covenants for Summit Greens Residents' Association, Inc., ("Governing Documents"), and because some of the services charged for had not been provided. [DE #44 ¶34 - ¶38].

On June 24, 2019, Defendant filed its Motion To Dismiss Second Amended Complaint and Supporting Memorandum of Law [DE #45] ("Defendant's Motion"). Defendant's Motion asserts that the Complaint fails to state a viable cause of action. Defendant asserts that both the Second Restated Declaration of Restrictions and Protective Covenants for Summit Greens Residents' Association, Inc., ("Governing Documents") and Florida Law authorize the charges that substantiate the debt claimed in the Letter. Defendant fails to address the second prong of Plaintiff's claims in Count I and Count II. In its Complaint, Plaintiff is not just alleging that Defendant sought to collection charges that are not authorized by law, but Plaintiff is also alleging that Defendant sought to receive compensation for services that Defendant had not provided when it sent the Letter.

Essentially, when analyzing whether Plaintiff stated a cause of action in Count I and Count II, this Court must first determine whether Defendant sought to collect charges that may not have been authorized by Summit Greens Residents' Association, Inc.'s, ("Summit Greens'") Governing Documents. In doing so, this Court must determine whether the relevant sections of the Governing Documents are ambiguous. The terms

ambiguity would preclude this Court from granting Defendant's Motion if the Governing Documents could reasonably be construed to forbid the charging of any debts, fines, fees, and costs that Plaintiff objects to in the Complaint. If the relevant terms of the Governing Documents are unambiguous, then this Court must determine whether the Complaint states facts that plausibly assert that Defendants sought to collect the debts, fines, fees, and costs that are not authorized by the unambiguous relevant language of the Governing Documents. Next, this Court must determine whether Plaintiff plausibly and not possibly alleges that Defendant sought compensation in the Letter for services that Defendant had not rendered to Summit Greens at the time the Letter was sent.

## **STANDARD OF REVIEW**

Although this Court would ordinarily be bound by the four corners of the complaint when considering a motion to dismiss, this Court can consider public records without converting the motion to dismiss into a motion for summary judgment. *See Universal Express, Inc., v. SEC,* 177 F. App'x 52, 53 (11th Cir. 2006). "In ruling on a motion to dismiss for failure to state a claim, the district court must accept the allegations of the complaint as true and must construe the facts alleged in the light most favorable to the plaintiff. A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *See Hunnings v. Texaco, Inc.,* 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam). "The allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint[s] are true (even if doubtful in fact). As a result, the plaintiffs must plead a claim to relief that is plausible on its face. A claim has facial plausibility when the pleaded factual content allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged."
*See Sanctuary Surgical Ctr., Inc. v. Aetna Inc.,* 546 F. App'x 846, 850 (11th Cir. 2013)
(*internal citations omitted*).

## THE GOVERNING DOCUMENTS ARE CONSTRUED
## IN ACCORDANCE WITH FLORIDA LAW

Although this action arises under Federal Question jurisdiction and federal law
governs the interpretation of the FDCPA, Florida Law governs the interpretation of the
Governing Documents. *See Kamel v. Kenco/The Oaks at Boca Raton LP,* 321 F. App'x
807, 809 (11th Cir. 2008) (holding that under Federal Question jurisdiction Federal Law
governs the interpretation of the statute sued under, but state substantive law governs the
interpretation of the contract that is relevant to the federal claim). Under Florida Law, the
interpretation of a written contract, including the question of whether a contract is
ambiguous, is a matter of law.  *See Disa v. Ashley Furniture Indus., Inc.,* 131 F. Supp. 3d
1316, 1320 (M.D. Fla. 2015) (*internal citations omitted*). An unambiguous contract is
construed "in accordance with its plain meaning so as to give effect to the contract as a
whole" and "in such a way to give a reasonable interpretation and effect to all
provisions." *See Id.* (*internal citations omitted*). When "a contract is susceptible to more
than one reasonable interpretation and cannot be reasonably reconciled, the contract is
deemed ambiguous and rules of contract interpretation must be applied." *See Id.* (*internal
citations omitted*). Under Florida Law, the construction of a contract becomes an issue of
fact when "the terms of a written instrument are disputed and are reasonably susceptible
to more than one construction." *See State Farm Fire & Cas. Co. v. De Londono,* 511 So.
2d 604, 605 (Fla. 3d DCA 1987).

## THE GOVERNING DOCUMENTS DETERMINE WHAT FEES A HOMEOWNERS' ASSOCIATION MAY CHARGE A HOMEOWNER

Florida Courts have addressed the whether Fla. Stat. §720.3085 or the governing documents determine the obligations and duties between a homeowners' association and homeowner when they conflict, unanimously holding that it is the governing documents that determine these obligations and duties. Whether disadvantageous to a homeowner's association or homeowner, "[r]estrictions found within a Declaration are afforded a strong presumption of validity, and a reasonable unambiguous restriction will be enforced according to the intent of the parties as expressed by the clear and ordinary meaning of [the governing documents] terms...." *See Coral Lakes Cmty. Ass'n, Inc. v. Busey Bank, N.A.,* 30 So. 3d 579, 584 (Fla. 2nd DCA 2010). In *Pudlit* and *Beacon Hill*, Florida's Fourth and Third District Court of Appeals each hold that the homeowners' association's governing documents bar the homeowners' associations from collecting past-due assessments from third parties, even though Fla. Stat. §720.3085 authorizes the collection of the past-due assessments from third parties. *See Pudlit 2 Joint Venture, LLP, v. Westwood Gardens Homeowners Ass'n, Inc.,* 169 So. 3d 145, 151 (Fla. 4th DCA 2015); *see also Beacon Hill Homeowners Ass'n, Inc. v. Colfin Ah-Fla. 7, LLC,* 221 So. 3d 710, 713 (Fla. 3rd DCA 2017). In *Pudlit* and *Beacon Hill*, the governing documents conflict with a different section of the same statute relevant to this matter, Fla. Stat. §720.3085. The *Pudlit* and *Beacon Hill* courts unequivocally hold that it is the governing documents, and not Fla. Stat. §720.3085, that determine what costs, fees, and charges homeowners' associations can charge homeowners, with the implication being that Fla. Stat. §720.3085 sets the upper limit for charges homeowners' associations can charge homeowners.

Furthermore, Fla. Stat. § 720.302(2) explicitly states, in part, that "…the Legislature recognizes that certain contract rights have been created for the benefit of homeowners' associations and members thereof before the effective date of this act and that ss. 720.301–720.407 are not intended to impair such contract rights…." *See Pudlit 2 Joint Venture, LLP, v. Westwood Gardens Homeowners Ass'n, Inc.,* 169 So. 3d 145, 148 (Fla. 4th DCA 2015). The right to charge fees, fines, interest, and costs is a contract right of the homeowners association that existed before 2013, when Fla. Stat. §720.302(2) was enacted. Additionally, homeowners' association members maintained the right to only be charged what the governing documents authorized before 2013, when Fla. Stat. §720.302(2) was enacted. As the *Pudlit* and *Beacon Hill* Courts highlight, serious concerns regarding freedom of contract and impairment of contract are implicated if the state, via the legislature or courts, alters the governing documents, and it would likely be unconstitutional for the state to grant the homeowners' associations rights that the homeowners themselves have not pursuant to the governing documents.

This outcome is logically consistent with the practical reality of what a homeowners' association and its governing documents are. Homeowners together determine to create a corporation entity to govern their interactions. Homeowners elect representatives, the board of directors, to draft documents to govern the corporate entity. The governing document is recorded, and new purchasers are considered to assent to the governing documents when they purchase a home governed by a Homeowner's Association. Fla. Stat. §720.3085(1)(a) sets the upper bounds for items that a claim of lien can secure under Florida Law, but the Governing Documents are the sole authority

that can authorize what fees and fines, from those allowable under Fla. Chp. §720, a homeowner's association can charge.

## **THE RELEVANT SECTIONS OF THE GOVERNING DOCUMENTS**

In Article 5, Section 10, the Governing Documents state:

> "[i]f any Assessment is not paid within ten (10) days after the due date, the Association shall have the right to charge the defaulting Owner a late fee of ten percent (10%) of the amount of the Assessment, or Ten and No/100 Dollars ($10.00), whichever is greater or as otherwise adopted by the Board of Directors from time to time, plus interest at the then highest rate of interest allowable by law from the due date until paid."

After enumerating the right of Summit Greens to accelerate assessments when the owner defaults, the Governing Documents state:

> "If the Assessments and any late fees and interest are not paid on the date when due, then such Assessments and any late fees and interest shall become delinquent and shall, together with such interest thereon and **the cost of collection thereof as hereinafter provided**, thereupon become a continuing lien on the property which shall bind such property in the hands of the Owner, his heirs, devisees, personal representatives, successors and assigns."

The Governing Documents hereinafter provide:

> "The Association may bring an action at law against the Owner personally obligated to pay the same or may record a claim of lien against the property on which the Assessment and late fees are unpaid, or may foreclose the lien against the property on which the Assessment and late fee are unpaid, in like manner as a foreclosure of a mortgage on real property, or pursue one or more of such remedies at the same time or successively, and there shall be added to the amount of such Assessment and late fee, **attorney's fees and costs of preparing and filing the claim of lien and the complaint in such action**, and in the event a judgment is obtained, such judgment shall include interest on the Assessment and late fee as above provided and a reasonable attorney's fee to be fixed by the court together with the costs of the action, and the Association shall be entitled to attorney's fees in connection with any appeal of any such action."

**THE GOVERNING DOCUMENTS DEFINE "COSTS OF COLLECTION"**
**AS THE COSTS OF PREPARING AND FILING THE CLAIM OF LIEN**
**AND THE COMPLAINT**

In Defendant's Motion, Defendant maintains the language "*together with interest thereon and costs of collection thereof*" in Article 5, Section 1 and Section 10, together authorize each charge contained in the Letter. The actual language used in each instance is "together with such interest thereon and the cost of collection thereof **as hereinafter provided**." Defendant ignores the modifying language from the Governing Documents "as hereinafter provided." In plain and ordinary English, the modifying clause "as hereinafter provided" expresses the drafter's intention that the Governing Documents will afterwards expressly specify what a "cost of collection" is. Defendant's interpretation conflicts with Florida caselaw regarding the interpretation of contracts because it ignores the parties' intent and because it seeks to interpret "cost of collection" in isolation from "as hereinafter provided." *See generally Nabbie v. Orlando Outlet Owner, LLC,* 237 So. 3d 463, 466 (Fla. 5th DCA 2018) (stating that under Florida Law, "[w]hen interpreting a contract, the court must first examine the plain language of the contract for evidence of the parties' intent. In so doing, courts must not read a single term or group of words in isolation) (*internal citations omitted*). [1]

Later in Article 5, Section 10, the Governing Documents state that "…and there shall be added to the amount of such Assessment and late fee, attorney's fees and costs of preparing and filing the claim of lien and the complaint in such action." As cost of

---

[1] Although Florida Law requires a court to deem contractual language ambiguous before utilizing rules of contract interpretation, Florida Courts consider the provisions of the entire contract to determine whether the contract is ambiguous. In *Nabbie,* the Court holds that the contract is unambiguous, but the Court highlights that the most dispositive factor in choosing one interpretation over the other was that the disfavored interpretation rendered language in the contract superfluous. *See* 237 So. 3d 463, 467 (Fla. 5th DCA 2018).

collection is not defined elsewhere in the Governing Documents, the only reasonable interpretation of the phrase "cost of collection thereof as hereinafter provided" is that the hereinafter provided refers to the phrase  "attorney's fees and costs of preparing and filing the claim of lien and the complaint in such action" that is contained afterwards within Article 5.

"It is a venerable principle of contract law that the provisions of a contract should be construed so as to give every provision meaning." *See Fla. Polk Cty. v. Prison Health Servs., Inc.,* 170 F.3d 1081, 1084 (11th Cir. 1999). In *Fla. Polk Cty.,* the Eleventh Circuit construes a forum selection clause as mandatory because the contract demonstrated that jurisdiction existed in the designated jurisdiction by common law, and therefore construing the forum selection clause as permission would render the clause meaningless. *See Fla. Polk Cty.,* 170 F.3d at 1083 – 84.[2]  In *Cardoso v. Coelho*, the Eleventh Circuit determines that the contract failed to clearly establish that the designated forum had jurisdiction, and therefore a permissive forum selection clause was not necessarily meaningless. *See* 596 F. App'x 884, 886 (11th Cir. 2015). The Eleventh Circuit determines that it is not mandated to construe the forum selection clause as mandatory to render the language meaningful, and therefore it construed the contract against the drafter holding that the forum selection clause is permissive and unenforceable. *Id.*

Implicitly, Defendant asserts that the language "cost of collection" includes any amount that Defendant unilaterally deems a "cost of collection" incident to the collection of past due assessments, but the language "as hereinafter provided" would be rendered completely meaningless unless the Governing Documents are construed to later provide a

---

[2] Forum-selection clauses are analyzed "under a 'mandatory/permissive' test" and courts only enforce "those clauses that unambiguously designate the forum in which the parties must enforce their rights under the contract." *See Fla. Polk Cty. v. Prison Health Servs., Inc.,* 170 F.3d 1081, 1083 n. 8 (11th Cir. 1999).

definition for cost of collection. Furthermore, the language "...and costs of preparing and filing the claim of lien and the complaint in such action" from Article 5, Section 10, is rendered meaningless by Defendant's construction of "cost of collection," because the earlier phrases from Section 1 and 10 would already authorize these charges[3]. The only reasonable interpretation of the plain language of the Governing Documents that renders no language meaningless is one that construes the "cost of collection" as "costs of preparing and filing the claim of lien and the complaint in such action."

Otherwise, the term "cost of collection" is ambiguous because the term, who defines it, and by what standards it will be defined is not provided by the Governing Documents. See *Dahl-Eimers v. Mut. of Omaha Life Ins. Co.,* 986 F.2d 1379, 1382 - 84 (11th Cir. 1993) (holding that the term "experimental" in an insurance policy is ambiguous because it "does not clearly specify who will determine whether a treatment is considered experimental or how that determination will be made"); *cf. Sanctuary Surgical Ctr., Inc. v. Aetna Inc.,* 546 F. App'x 846, 854 (11th Cir. 2013) (holding that the terms "medically necessary" and "covered service" are unambiguous because the insurance policy provided a definition for the terms, and explained how such a determination would be made). As Defendant's Motion is a motion to dismiss, all factual inferences should be inferred in favor of Plaintiff, and the factual inference that the ambiguous phrase "cost of collection" in Article 5, Section 1 and Section 10, means

---

[3] For context, the entire later portion of Article 5, Section 10 states: "The Association may bring an action at law against the Owner personally obligated to pay the same or may record a claim of lien against the property on which the Assessment and late fees are unpaid, or may foreclose the lien against the property on which the Assessment and late fee are unpaid, in like manner as a foreclosure of a mortgage on real property, or pursue one or more of such remedies at the same time or successively, and there shall be added to the amount of such Assessment and late fee, attorney's fees and costs of preparing and filing the claim of lien and the complaint in such action, and in the event a judgment is obtained, such judgment shall include interest on the Assessment and late fee as above provided and a reasonable attorney's fee to be fixed by the court together with the costs of the action, and the Association shall be entitled to attorney's fees in connection with any appeal of any such action."

"costs of preparing and filing the claim of lien and the complaint in such action" is reasonable enough that the interpretation is plausible and not speculative. Therefore, this Court should not dismiss Plaintiff's Complaint unless this Court determines that the fees Plaintiff objects to in the Complaint are authorized as "attorneys fees and costs of preparing and filing the claim of lien and the complaint in such action."

<u>**THE COMPLAINT PLAUSIBLY ALLEGES THAT DEFENDANT SOUGHT UNAUTHORIZED CHARGES IN THE LETTER**</u>

Defendant's Motion side-steps the allegations of the Complaint, refuting them with conclusory statements that the statute and the Governing Documents authorize fees, costs, and other items that it seeks to collect from Defendant. To summarize the allegations contained in the Complaint, Plaintiff alleges in ¶12 that Defendant sent the Letter to Plaintiff, attempting to collect a debt, and that the debt is the exact same amount as the debt asserted due in a Statement of Account. From this equivalence, Plaintiff alleges that the credit/debits contained in the Statement of Account are the actual transactions that substantiate the debt Defendant attempted to collect with the Letter. In ¶25 – ¶27 and ¶35 - ¶38, Plaintiff alleges that certain charges contained in Statement of Account are not authorized by the Governing Document. *See* [DE# 44]. As Defendant attempted to assert a balance substantiated partially by valid charges and partially by unauthorized charges, Plaintiff asserts in Count I that Defendant misrepresented the compensation that Defendant could receive from Plaintiff, violating 15 U.S.C. §1692(e)(2)(B), and in Count II Defendant misrepresented the total debt Plaintiff owed Summit Greens, violating 15 U.S.C. §1692(e)(2)(A).

In ¶27 and ¶37, the Complaint specifically alleges that the "Administration Fee," is not authorized by the Governing Documents. The Statement of Account contains a

charge on September 21, 2017, for $10 labeled Administration Fee, a charge on October 5, 2017, for $87 labeled Administration Fee, a charge on December 08, 2017, for $87 labeled Administration Fee, a charge on March 12, 2018, for $335 labeled Administration Fee, and a charge on April 12, 2018, for $175 labeled Administration Fee. *See* [DE# 44.3].

The Governing Documents specify that a Late Fee may be charged, up to ten percent of the total assessment, or $10, whatever is greater. [4]  The Monthly Assessment is $278.38, which means the maximum monthly late fee can be at most $27.84 dollars. Except for the September, 2017, Fee, the Administration Fee cannot be a Late Fee. Therefore, each Administration Fee must be either an attorney fee or a cost of preparing and filing the claim of lien and the complaint to be authorized by the Governing Documents.

In the Letter, Defendant asserts that only $850 in attorney's fees and $313.48 in costs are due, and the Letter contains Administration Fees in its own section with late fees. In the Statement of Account, attorney costs and attorney fees are each separate entries from Administration Fees. A previous various of Defendant's Motion even claimed that only $850 in Attorneys Fees was sought, and that the $850 was substantiated by entries on April 12, 2018, and June 19, 2018. *See* [DE# 22, pg. 6, ¶22.]

Furthermore, as alleged in the Complaint, Summit Greens filed the Claim of Liens in March, 2018  and July, 2018. When the Letter was sent the Complaint had not yet been filed. The dates for the Administration Fee entries and dates that the Claim of Liens and

---

[4] The Relevant portion of Article 5, Section 10 states: "[i]f any Assessment is not paid **within ten (10) days after the due date,** the Association shall have the right to charge the defaulting Owner a late fee of ten percent (10%) of the amount of the Assessment, or Ten and No/100 Dollars ($10.00), whichever is greater or as otherwise adopted by the Board of Directors from time to time, plus interest at the then highest rate of interest allowable by law from the due date until paid."

Complaint were filed are so temporally distant from each other that Plaintiff can plausibly and not speculatively allege that the Administration Fees are not costs of preparing and filing the claim of lien or the complaint, except for the March 12, 2018, Administration Fee.

As the Administration Fees are neither attorney's fees nor the costs of preparing and filing the claim of lien and the complaint, they are not authorized by the Governing Documents, which only authorize "attorney's fees and costs of preparing and filing the claim of lien and the complaint in such action" as costs of collection. The inclusion of the unauthorized Administration Fees increases the total balance asserted in the Letter beyond that which was actually due on July 9, 2018. This renders the balance asserted in the Letter a misrepresentation of the total amount due and a misrepresentation of Defendant's entitlement to compensation for Administration Fees.

In ¶27 and ¶37, the Complaint specifically alleges that the "Wind Up Fee" is not authorized by the Governing Documents. Wind Up in plain English would seem to designate the actions that occur during the termination of a transaction or event. Legally, it would refer to the petition used in the United Kingdom for initiating an involuntary bankruptcy. Neither of these concepts are irrefutably an attorney fee or a cost of preparing and filing the claim of lien and the complaint. The vagueness and irrelevance of the plain English meaning of "Wind Up" to any collection process inherently creates a factual inference that it may be unauthorized, which must be resolved in favor of Plaintiff for the purposes of Defendant's Motion. Perhaps the Wind-Up Fee is a valid, but confusingly labeled, attorney fee or cost associated with the claim of lien or complaint. Perhaps it is a nebulous label used by the Defendant to mark up its bill with a defaulted

homeowner. Plaintiff is entitled to discovery to ascertain the truth regarding this charge, unless this Court is convinced that "it appears beyond doubt that the plaintiff can prove no set of facts" that the Wind-Up Fee is unauthorized by the Governing Documents. *See generally Hunnings v. Texaco, Inc.,* 29 F.3d 1480, 1484 (11th Cir. 1994) (*per curiam*). The inclusion of the unauthorized Wind Up Fees increases the total balance asserted in the Letter beyond that which was actually due on July 9, 2018. This renders the balance asserted in the Letter a misrepresentation of the total amount due and a misrepresentation of Defendant's entitlement to compensation for the Wind-Up Fee.

These facts and their inferences are sufficient for Plaintiff to plausibly and not speculatively allege that Defendant violated 15 U.S.C. §1692(e)(2)(A) by misrepresenting the total debt owed, and that Defendant violated 15 U.S.C. §1692(e)(2)(B) by misrepresenting its entitlement to compensation for services provided

**THE COMPLAINT PLAUSIBLY ALLEGES THAT DEFENDANT SOUGHT TO COLLECT COMPENSATION FOR SERVICES NOT PROVIDED IN THE LETTER**

Defendant's Motion fails to address the second prong of Plaintiff's claims in Count I and Count II that Defendant sought to receive compensation for services that Defendant had not provided when it sent the Letter. In ¶25 - ¶27, and ¶35 - ¶37, Plaintiff alleges that certain charges contained in Statement of Account are charges for services not actually rendered. As Defendant attempted to assert a balance substantiated partially by valid charges and partially by charges for services not rendered, Plaintiff asserts in Count I that Defendant misrepresented the compensation that Defendant could receive from Plaintiff, violating 15 U.S.C. §1692(e)(2)(B), and in Count II Defendant

misrepresented the total debt Plaintiff owed Summit Greens, violating 15 U.S.C. §1692(e)(2)(A).

In ¶26 and ¶36, the Complaint specifically alleges that the Association charged Plaintiff $1081.72 in unauthorized charges on April 12, 2018. As alleged above, the Administration Fee is not authorized by the Governing Documents. Neither version of the Management Contract provided by Plaintiff nor Defendant authorizes Administration Fees. See [DE# 44.4] and [DE#45, pg. 12 – 13]. Attorney's fees and attorney's costs are recoverable under the Governing Documents, but each cannot be an estimation of future costs/fees, or for services not provided. *See Prescott v. Seterus, Inc.,* 635 F. App'x 640, 644 (11th Cir. 2015) (reversing the granting of a summary judgment and holding that the attempt to collect estimated fees could violate 15 U.S.C.§1692(e); *see also Daniel v. Select Portfolio Servicing, LLC,* 159 F.Supp.3d 1333, 1336 (S.D.Fla. 2016) (refusing to grant a motion to dismiss when the plaintiff objected to charges for being either "marked up" or for services not rendered").

Plaintiff asserts in the Complaint that in February, 2018, Summit Greens informed it that it costs $335 to prepare and file a lien. Leland Management drafted the claim of lien in March 12, 2018. On March 12, 2018, Summit Greens charged Plaintiff $335, labeling the charge as an administration fee. The most reasonable inference from these facts is that the March 12, 2018, Administration Fee is actually the cost of preparing and filing the March 12, 2018, Claim of Lien. With this being the case, there is no justification for either the April 12, 2018, Administration Fee or the attorney's fees and costs, as the Amended Claim of Lien was not filed until July, 2018, and the Complaint was not filed until September, 2018.

This temporal asymmetry between when the fees were charged and when the fees were incurred, when combined with allegations that all possible fees were already charged, together plausibly and not speculatively alleges that the April 12, 2018, fees are charges for services not yet provided. The inclusion of these unauthorized or estimated charges increases the total balance asserted in the Letter beyond that which was actually due on July 9, 2018, rendering the balance asserted in the Letter a misrepresentation of the total amount due, and a misrepresentation of services rendered and compensation that may lawfully be received. These facts and their inferences are sufficient for Plaintiff to plausibly and not speculatively allege that Defendant violated the FDCPA.

To grant Defendant's Motion, this Court must determine that Plaintiff's allegations could never demonstrate that the objected to charges are unauthorized, and that Plaintiff's allegations could never demonstrate that Defendants charged Plaintiff for services not provided. Defendant carries a heavy burden when moving to dismiss Plaintiff's Complaint, and the allegations and arguments contained within Defendant's Motion are insufficient to meet this burden.

## <u>AMENDMENT IS NOT FUTILE</u>

In the alternative that this Court determines that Count I and Count II fail to allege a violation of the FDCPA, Plaintiff should be granted leave to amend its Complaint. In *Bryant v. Dupree,* the Eleventh Circuit holds that amendment is not futile unless it appears beyond doubt that the plaintiff cannot prove a set of facts that would entitle it to relief. *See* 252 F.3d 1161, 1164 (11th Cir. 2001).

The Complaint alleges facts demonstrating that Plaintiff can state a cause of action under the FDCPA. Assuming that each charge contained in the Statement of

16

Account is actually authorized, the account between Summit Greens and Plaintiff is an open account. Plaintiff tendered payments to Summit Greens, and these payments were accredited according to Florida Statutes, with principle being the last item payments are accredited to. The temporal asymmetry between when Plaintiff is charged in the account and when services are provided, based on the public records for when claims of lien and the complaint was filed, plausibly suggests that charges may not have been applied properly, and therefore the principle, and interest derived from it, due to Summit Greens would be different if charges were applied properly. Under *Bryant,* Plaintiff should be afforded the opportunity to plead this theory if this Court grants Defendant's Motion.

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that a copy of the foregoing Memorandum In Opposition To Defendant, Clayton & Mcculloh, P.A.'S, Motion To Dismiss Second Amended Complaint And Supporting Memorandum Of Law [De #45] was served on all parties of record via electronic filing this 11th day of July, 2019.

Respectfully Submitted,

By: /s/    Benjamin Weissman
David M. Chico, Esq., FBN: 010318
Benjamin Weissman, Esq., FBN: 120770
DAVID CHICO LAW GROUP
607 Celebration Avenue
Celebration, Florida 34747
T: 407-933-7703
F: 407-933-7713
For eService:serve@davidchicolaw.com
Trial Counsel for Plaintiff